UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 08-145 (MJD/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| 01-Tung Nguyen, 08-Christian Pham, and 09-Tuan Dang, | |
| Defendants. | |

LeeAnn K. Bell, Assistant United States Attorney, for the Government.
Jeffrey C. DeGree for Defendant Tung Nguyen.
Lee R. Wolfgram for Defendant Christian Pham.
Richard J. Malacko for Defendant Tuan Dang.

**THIS MATTER** came before the undersigned United States Magistrate Judge on July 23, 2008, on:

      1. Defendant Tung Nguyen's Motion to Suppress Statements [#238];
      2. Defendant Christian Pham's Motion to Suppress Evidence Obtained by Search and Seizure [#177 & #179];
      3. Defendant Tuan Dang's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#188].

No testimony was given at the hearing. The Government submitted one exhibit.[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that:

---

[1] Gov't Ex. 1 is a copy of the search warrant which pertains to both Defendant Pham's and Defendant Dang's motions to suppress evidence. The Government represented at the hearing that it would submit a transcript of the statements Defendant Nguyen moved to suppress. The Government has since submitted a letter to the Court stating that it will not use the statements at issue at trial, thereby mooting Defendant Nguyen's Motion to Suppress [#238].

1. Defendant Tung Nguyen's motion [#238] is MOOT;
2. Defendant Christian Pham's motion [#177 & #179] be DENIED; and
3. Defendant Tuan Dang's motion [#188] be DENIED.

## I. FINDINGS OF FACT

On April 9, 2008, Magistrate Judge Susan Richard Nelson signed eighteen search warrants which were supported by the same affidavit in connection with a suspected marijuana growing operation. Defendants Pham and Dang challenge the validity of two of these warrants. Task Force Officer Anthony J. Fletcher from the Drug Enforcement Administration ("DEA") signed the affidavit in support of the warrants. Officer Fletcher has been employed as a task force officer since December 2006.

Officer Fletcher stated in his affidavit that in his training and experience, he has become familiar with how large scale marijuana operations are run.

He stated that in November 2007, Sergeant Boelter of the West Hennepin Drug Task Force concluded an investigation into the indoor marijuana cultivation activity of Ryan Hiep Thanh Dinh ("Ryan Dinh") at a residence in Brooklyn Park where law enforcement discovered approximately 1,100 marijuana plants. Ryan Dinh and his brother Nhan Thanh Dinh are facing charges in United States District Court for the District of Minnesota. During that investigation, officers observed Ryan Dinh driving to various stores, including a hydroponic supply store, with a another male, later identified as Tung Nguyen. Ryan Dinh and Defendant Tung Nguyen purchased a number of items, including black starter trays, mesh pots, spray bottles, and rubber gloves. Sergeant Boelter knew, through his training and experience, that such supplies were used to construct indoor marijuana grow operations.

Officer Fletcher stated that in December, he and Sergeant Boelter learned from an individual,

referred to in the affidavit as a Source of Information ("SOI"), that a group of Vietnamese persons in the Twin Cities were involved in a large-scale indoor marijuana operation. The SOI told them that the leader of the operation was "Tung." When shown a picture of Defendant Tung Nguyen, the SOI positively identified him as the person the SOI knew as Tung and was the leader of the operation.

**Search of the Mamie Avenue Residence.**

Officer Fletcher stated that Sergeant Boelter first investigated the Mamie Avenue residence after finding a piece of mail in the trash at a home on Brooks Avenue. The mail was addressed to a man named Thuong Nguyen at the Mamie Avenue address. Sergeant Boelter searched the trash at the Brooks Avenue residence after he observed the investigation's primary suspect, Tung Nguyen, open the garage door, enter the garage, shut the door and then emerge ten minutes later. Officer Fletcher stated that in Sergeant Boelter's training and experience, it is extremely unusual to arrive at a house one does not own, open the garage door by oneself, park in the garage, shut the door and then leave less than ten minutes after arriving. Sergeant Boelter told Officer Fletcher that he believed Tung Nguyen was picking up or delivering items related to a marijuana grow operation.

Officer Fletcher stated that Sergeant Boelter ran the Mamie Avenue address through the Lexis Nexis Accurint law enforcement database and found that the owner listed was Thuong Huu Nguyen, a Michigan resident. He conducted surveillance on the house after several snowfalls of two to four inches or more over a four month period and observed that areas of the roof were completely absent of snow cover immediately after a snowfall. He observed that the rooftops of neighboring houses at the same times and noticed extensive coverage following snowfalls. In Sergeant Boelter's

training and experience, the heat from halide lights used to grow marijuana often cause a visible difference in the moisture collecting on the roof of the structure in which the grow operation is located. Officer Fletcher stated that Sergeant Boelter also noticed that the house lighting system was on a timer and that there was little or no traffic to and from the house. In his training and experience, those involved in marijuana growing operations often install light timer systems to make it appear as though the house is occupied.

Officer Fletcher stated that Sergeant Boelter noticed, in his surveillance of the Mamie residence, that on a weekly basis there has been no garbage left out for disposal. In his training and experience, Sergeant Boelter is aware that those involved in growing marijuana do not leave trash for pickup at the residence because doing so increases the chances of being detected by law enforcement. In his training and experience, trash is often disposed of in public places or at another residence. In this case, mail with the Mamie Avenue address was found in trash disposed of at residences on Brooks Avenue East and Douglas Drive.

Officer Fletcher stated that surveillance officers observed both of Thuong Nguyen's cars parked outside of a residence on Douglas Drive at all hours of the day rather than at the residence he owns on Mamie Avenue. In Sergeant Boelter's training and experience, it is common for those growing marijuana indoors to own a house and not reside at that address.

Officer Fletcher stated that Sergeant Boelter received an administrative subpoena response from XCEL Energy for the residence on Mamie Avenue. The subscriber of the service was Thuong Nguyen and he listed Mystic Nails as an employer. XCEL Energy provided records from March 2007 through March 2008. The average daily consumption rates ranged from 283 to 1017 Kilowatt usage, a range which did not indicate any "extreme or highly unusual power usage patterns but the

range "tend[ed] to be on the law side considering the size of the house." (*See* Ex. 1 at 21.)  In Sergeant Boelter's training and experience, low energy usage readings is an indication that electricity is being stolen for use in cultivating marijuana plants.

**Search of the Banks Court Residence.**

Officer Fletcher stated that in January and February of 2008, surveillance officers were placed at the Mystic Nails on 98th Street in Bloomington in an attempt to learn the identities of two persons, known by the SOI and officers as "Ly" and "Detroit" who, according to the SOI, were "big fish" in Tung Nguyen's marijuana growing operation.  The SOI told law enforcement officers that "Detroit" owned a marijuana growing operation in Inver Grove Heights.  On February 26, 2008, Sergeant Boelter observed Defendant Tuan Dang exit Mystic Nails with Defendant Lai Hong Pham.  They left the salon in a Green 2000 Nissan Xterra SUV MN Plate #HVH-689, a vehicle which Sergeant Boelter had observed visit the "Interior Gardens" hydroponic grow shop on Central Avenue in Minneapolis.  In Sergeant Boelter's training and experience, "grow nutrients" are commonly used in indoor marijuana cultivation.

Officer Fletcher stated that surveillance continued on the vehicle until it arrived at the residence on Banks Court in Inver Grove Heights.  This house was determined to be owned by Tuan Dang and was purchased in February 2007 for $299,930.  A search on the Lexis Nexis Law Enforcement Database revealed that Tuan Dang had a Michigan drivers' license and between September 2000 and April 2007, he lived with Thuong Nguyen, the owner of the house on Mamie Avenue.  Both men claimed to be employees of Mystic Nails.

Officer Fletcher stated he observed what appeared to be "after-market ventilation" on the roof of the Banks Court residence.  In his training and experience, post-construction ventilation is

an indicator of a potential marijuana grow operation. On March 28, 2008, Officer Boelter collected the garbage left out for disposal at the curb at the Banks Court residence. In his search of the contents, he found the following items: approximately 15 marijuana leaves which field-tested positive for THC using a Nik-test kit, three white rubber gloves with a green residue on them (which later field-tested positive for THC using a Nik-test kit), a piece of mail for Tuan Dang at the Banks Court residence, and two instruction pamphlets for 18-inch pedestal fans. In Officer Fletcher's training and experience, such fans are routinely used in marijuana grow operations.

## II.   CONCLUSIONS OF LAW

**A.   The Affidavit in Support of the Search Warrant for the Mamie Avenue East Residence [Defendant Pham's Motion to Suppress #177] and the Banks Court Residence [Defendant Dang's Motion to Suppress #188] Contained Sufficient Probable Cause for Issuance of the Search Warrants.**

Defendants Pham and Dang contend that the affidavit in support of the search warrants failed to establish probable cause to search the residences. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen,* 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). When information in the application for the search warrant is provided by a confidential informant, the totality of the circumstances must show that the information is sufficiently reliable. *United State v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 233). Sufficient reliability may be shown through "corroborat[ion] by other evidence, or if the informant has a history of providing reliable information." *Lucca*, 377 F.3d at 933 (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court " 'had a substantial basis for . . . conclud[ing] that probable cause existed.' " *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39.) Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

> **1.    Mamie Avenue East Residence [Defendant Pham's Motion to Suppress #177].**

Defendant Christian Pham challenges the validity of the search conducted at the Mamie Avenue East Residence. The affidavit in support of the search warrant does not once mention Christian Pham's name and he has not explained to the Court his relationship to the house. Assuming but without deciding that Christian Pham has standing to challenge the warrant, the Court concludes that, given the totality of the circumstances described in the affidavit in support of the search warrants, the Court, in issuing the warrant, had a substantial basis for concluding that probable cause existed that evidence of a marijuana grow operation would be found in the home.

Officer Boelter first suspected the Mamie Avenue address when he found a piece of mail addressed to a Thuong Nguyen during a search of the trash at a home on Brooks Avenue. In Boelter's training and experience, trash from marijuana grow houses is often disposed of in other residences or in public places. Officers had previously seen Tung Nguyen, the man identified by their informant as the leader of the operation, enter and leave the Brooks Avenue home. Their surveillance of the Mamie Avenue residence confirmed their suspicions that it was involved in the marijuana growing operation. Officer Boelter observed the absence of snow cover on the house immediately after a snowfall when the neighboring homes did have snow on their roofs. He observed that the lights in the house were timed to turn on and off and that there was little or no traffic entering and exiting the house. He observed that no garbage was left out for pickup and that the home owner's car was observed at all hours of the night at a different residence. In Officer Boelter's training and experience these observations are signs that a marijuana grow operation may be underway. These observations, when coupled with the informant's information and evidence found in the trash at the Brooks Avenue home, establishes probable cause to believe that evidence of marijuana growing will be found in the Mamie Avenue home. The motion must be denied.

**2.      Banks Court Residence [Defendant Dang's Motion to Suppress #188].**

Defendant Tuan Dang challenges the validity of the search conducted at the Banks Court residence, which he owns. Given the totality of the circumstances described in the affidavit in support of the search warrants, the Court had a substantial basis for concluding that probable cause existed that evidence of a marijuana growing operation would be found inside.

Investigators in the case observed two suspects, Defendant Tuan Dang and Defendant Lai Hong Pham, leave a Mystic Nails store in Bloomington in a Green 2000 Nissan Xterra that

8

investigators had previously observed visiting "Interior Gardens," a hydroponic grow shop. Investigators observed the car as it drove to the Banks Court residence located in Inver Grove Heights, Minnesota. Investigators learned that the house on Banks Court belonged to Defendant Tuan Dang who had a Michigan driver's license. This information was consistent with the SOI's statement that there was a man involved in the grow operation whose nickname was "Detroit" and was growing marijuana out of a home in Inver Grove Heights.

Investigators observed "after-market ventilation" on the house and, upon searching the trash left outside for pickup, found 15 marijuana leaves and rubber gloves with green residue that tested positive for marijuana. They also found two instruction manuals for pedestal fans. After market home ventilation and pedestal fans are known to be used in growing marijuana. Given the abundance of evidence articulated in the search warrant affidavit, the motion must be denied.

> **3.  The Good Faith Exception to the Warrant Requirement Applies to the Present Case and All Evidence Seized During the Execution of the Search Warrant is Admissible.**

Even if this Court were to determine that the applications in support of the search warrants did not provide probable cause for the issuance of the search warrants on the residences, law enforcement who executed the search warrants on the residences did so in the good faith belief that the search warrants were supported by probable cause, as they had been issued by a United States Magistrate Judge who determined that probable cause existed. The good-faith exception to the exclusionary rule provides that evidence will not be excluded where police officers reasonably rely on a search warrant issued by a neutral judicial officer, even if that search warrant is later declared invalid. *See Leon*, 468 U.S. at 925-26. The officers in this case reasonably relied on search warrants that were issued by a neutral judicial officer; therefore, even if the search warrants in this case were

not supported by probable cause, the evidence seized as a result of the execution of the search warrants is still admissible.

**B.      Defendant Nguyen's Motion to Suppress Statements [#238] is moot.**

Defendant Nguyen seeks to suppress statements that were made approximately eighteen minutes into a recorded interview with investigators. (*See* Def. Mem. in Support of Mot. to Supp. Statement at 1-2, Dkt. #243.)  In response to Defendant's filing of his memorandum, the Government filed a letter with the Court stating that, while it does not concede that the statements should be suppressed, it will not seek to introduce in its case-in-chief any statements made after minute 18. (*See* Dkt. # 252.)  Defendant's motion is therefore **MOOT**.

**III.    RECOMMENDATION**

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Tung Nguyen's motion [#238] be DENIED as MOOT;

2. Defendant Christian Pham's motion [#177 & #179] be DENIED; and

3. Defendant Tuan Dang's motion [#188] be DENIED.


DATED: August 11, 2008                             s/ *Franklin L. Noel*
                                                                  FRANKLIN L. NOEL
                                                                  United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 28, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 28, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.